I have Merlenda Rivera v. A.J. Bonner, others, or is that? Yeah. Mr. Hogan. Good morning, Your Honors. May it please the Court, Counsel. Your Honors, this case is about accountability and accountability of those that are charged with guarding our most vulnerable persons. This is a 1983 case based on an incident that happened in Hale County in December of 2014. The district court in this case incorrectly held that the sheriff and the chief jail administrator were entitled to qualified immunity because their actions did not constitute deliberate indifference. On the evening in question, Esmerelda Rivera was a young Hispanic woman. She was riding in a passenger vehicle with her husband. They were stopped in Hale County on a rural interstate. Her husband was intoxicated. He was arrested for DWI. She was also intoxicated and was placed under arrest for public intoxication, was taken to the Hale County Detention Center, and booked in. While she was there, the senior jailer on duty, Manuel Fierros, took her into a secluded room and sexually assaulted her. The room that Manuel Fierros took her into was not protected by video surveillance, which existed at all other points in the jail. But this one room had been exempted from the video surveillance program by a deliberate action of the sheriff, David Maul. Was that the attorney interview room? It was a multipurpose room, Judge. It was used sometimes as an attorney interview room. More frequently, it was used for MHMR to come in and interview people that had mental health issues in the jail. It was also used as an overflow booking room and as an arraignment room. But even though it had these other purposes and even though it did not specifically have the video cameras, and everybody there knew that it did not have video cameras, everybody knew this was a blind spot in the jail, which provided a danger zone for actions of this kind, nothing was done to restrict access to that room. It was not – there was a lock on the door, but they never locked it because they didn't know where the key was. There were no incidents of any type of wrongdoing in that room? Not in that room, no. Were any charges ever brought against Mr. Fierro? I mean, was he charged criminally for anything? He was. Mr. Fierro was terminated from his position. He was placed on administrative leave first. He was charged with the violations of civil rights of a person in custody, and he subsequently entered a plea and received probation on that criminal offense. What happened that evening was set in motion and facilitated by the hiring of Manuel Fierro as well two years earlier. At the time Manuel Fierro applied for a job there at the Hale County Jail, standard policy in the State of Texas is that you have to produce an application. On that application you have to list any criminal charges that have ever been filed against you. You have to state the disposition of those charges. You have to provide documentation about those charges. And those things are all part of the packet that the jail takes in, the Sheriff's Department takes in, that they send down to Austin. Mr. Fierro's lied on his application. He did not disclose that he had been arrested on at least two counts of sexual indecency with a child by contact as a juvenile. He was required to disclose those. The offenses were subsequently discovered by A.J. Bonner, the jail administrator. These were two separate events in two separate counties. Is that correct? They were two separate events, Your Honor, yes. They had two separate dates of offense listed on the TLETS report. I believe that they were both in the same county. They may have been in sister counties right next together, but it wasn't like they were far apart in different places in the State. In the record on appeal, the application is there, and then attached to it is the discovery of the two juvenile detention events. Correct. So if I'm just thinking sort of that your position is that the actions do establish deliberate indifference, and then the various actions you're going to take us through are the failure to investigate further on hiring, the insufficiency of training, and then the lack of supervision, roughly. That's correct. What would help me most as you discuss each one, if you could give me a case, any circuit case that establishes that, for example, the first one, the failure to investigate an arrest that led to declined charges nevertheless goes beyond oversight and negligence, but it's clearly established that that would lead to a substantial risk of harm. So with each of these actions that you think establish deliberate indifference, any circuit case law that says that a reasonable person would have known that that would be lead to substantial risk of harm. Okay. I will attempt to do that. The — Maybe start with the hiring. So if you don't look beyond an arrest that your records show led to a declination — well, it's not an arrest. It's a juvenile detention. Is there a case that you know that would — just that alone, and you can make an aggregate argument at the end. Do you have any case that tells us that that's deliberate indifference? Just that in and of itself, I am — while I am looking for that, these cases are — come in a variety of ways, of course. Most — The closest one, because that's the qualified immunity question, as I understand it. Yeah. I believe that the closest one is that Hardeman case. Okay. But Hardeman wasn't an arrest, not conviction. Hardeman and Gross are in the preemployment files. There are statements. So I'd really like one that just has arrests are beyond a red flag. It may not exist, but that's a problem we've got. I have read a couple of the cases in this case. I don't have them here with me today. I'd be happy to submit a Rule 28 letter on those, if that's all right. Oh, that's okay. How do you deal with Brown from the Supreme Court? Because there, it wasn't sexual assault. It was excessive force. There, the police officer had actually been convicted of assault and some other things, public drunkenness, interference with law enforcement. Actual convictions as an adult and for aggressive behavior, and the allegation in the civil rights case was excessive force. There, the Supreme Court says even that's not enough for a wrongful hiring claim under the constitutional standard. How do you distinguish — how do you basically argue you have to show this is a better case than Brown? How do you do that when you don't even have convictions? Because of the fact that there was enough disparity between what was alleged in the police conduct, the law enforcement conduct in that case, and the underlying convictions. And that's where the Supreme Court said the underlying convictions did not involve use of excessive force in a police custodial case and that they didn't really — they would not have been enough to put someone on notice that they would have been — that they were using excessive force against someone. And there's nothing in the record here, is there, that says what these — this — it was just an arrest. It wasn't even charged, right? There were two arrests, never even indicted. Is that correct? There were two charges. And I think it's important to look at the language of the charges and — The district attorney didn't — where in the record does it have the actual charge? That is on page — Doesn't it say charges declined? The DS. On one of them it does. It's on page 1298 and 99 in the record. Of the two charges, one charge was declined. The other charge was, quote, referred. And it was — the agency that it was referred to was the juvenile probation office in Randall County. So that indicates that that charge was pursued, that something was done with that charge. However, when Mr. Bonner called the DA's office in — or the juvenile probation office in Randall County, he received just a shrug of the shoulders. They did not tell him anything about that. But they have access to those. What about the training? I don't mean to move you off the hiring, but I'm — Sure. I'm interested in what — this isn't a zero training case, but the materials that they put in the record certainly aren't elaborate. So do you have a case that you think establishes that this level of training, where they get the guy to sign, they follow what I guess is abbreviated as T. Cole? T. Cole, is that how it's described? Yes. Yeah. How would that, you know, again get to the high level of deliberate indifference as opposed to maybe negligence? It is essentially a zero training case. And one of the cases that discusses that is Walton v. Dawson, which is cited in the brief. That's an Eighth Circuit case from 2014. And that's a case where — The door — the cell locks. Correct. Correct. Was he already a certified peace officer under Texas law? He was not, Your Honor. He was trained by the Hale County Sheriff's Department. And the essence of their training was do not have sex with an inmate. Yeah. And that was it. Are you sure about that statement? He was not a licensed jailer under these T. Cole standards? He didn't get his license? Not prior to going to be employed by Hale County. Okay. He obtained his license for the first time through Hale County. Before or after the incident? Before. So he was licensed? I'm sorry? He was licensed at the time of the incident, yes. I misunderstood the question. I thought you were asking whether he was licensed through other agencies. Well, the licensure gives you a base level. They gave us four units of materials that relate to no sexual conduct. And they have the photos, and he signs that he won't do it. And that may seem blunt and minimalist and be offensive in its minimalism, but it's not a zero-training case. I agree. It's not a zero-training case. Okay. And so your best authority for violation of clearly established law for this minimalist but State-approved training would be what? The 8th Circuit Walters case? That and our expert report. I know you have the expert, right. Okay. Our expert report said in recent years, in light of the growing body of knowledge and in light of the adoption of PREA in the Federal system and in the State system, not yet trickled down to the counties. Isn't that you haven't reached best standards? You're not at the top. But that's not really saying that the sheriff and the jailer, you know, any reasonable person in their position would have known that this is deliberate indifference. But they knew that they had problems within the jail because of the earlier incident with Toby Castilleja, who was another jailer there. He was a senior jailer. Interestingly, he was also Mr. Fierro's field training officer at the jail. It works a little bit against you here because the cameras caught him and then the colleagues reported him, which in this circumstance, which has innumerable tragic aspects to it, malicious, not just accidental. To me, the real problem is the two other officers walk away, leaving Fierro's alone. No camera. But then the sheriff wouldn't be unnoticed that this is going to happen based on the prior incident. You have thoughts on that? But I believe it supports our case in two ways. One is it shows the effectiveness of the camera system and shows how the cameras would have helped in this case. There isn't a case that I know of that says you have to have a camera everywhere, especially if it's a multipurpose room where attorneys are going in and the booking room was occupied, which I think is an undisputed fact here. Right. The incident, the prior incident that took place a few months earlier, did it happen in the same room? It did not. Okay. It happened in the jail dorms area. But the second way I think that prior incident supports us is it puts the sheriff on notice that they have systemic problems about sex in the jail. So what training, based on that prior incident, what additional training or other measures should the sheriff have implemented? They should have had the training that PREA recommends, training on what constitutes sexual contact. There was even a dispute between Mr. Fierros about whether doing what he did was sex with an inmate or not. They should have had positive reinforcement of the other employees, the people that left Mr. Fierros alone, to say that no male jailer will be left alone with a female inmate, period, end of circumstances. Are you saying none of the materials said there can be no consent? Is that one of the points? That he thought, well, he was goaded into this? That's correct. That's correct. And no one told him that there's no way you can have consent. And Toby Castilleja was never told that asking a female detainee to masturbate in front of him was sexual contact with a prisoner. And those are substantial problems in the jail's training that constitute deliberate indifference. What about the defense's argument that there's a causation problem with the additional training because the rape here was so plainly, you know, unlawful and that it's not a situation where it's a violation of some procedure. It's a serious, violent offense that was committed, and so anyone would know that's illegal. And this individual was just had a malicious mindset and was not going to follow the law to engage someone who's going to engage in an act like this. But that doesn't justify prison officials or jail officials putting their head in the sand and just saying, well, it's going to happen anyway, similar to the old boys will be boys mentality. We still must do what we can. But you have to show that if this additional training, and I think the supervision is, there's a strong causal link. If there had been supervision or additional people there, this wouldn't have happened. But how do you show that additional manuals or discussions about improper sexual conduct would have prevented this person from engaging in this horrific act? I'm out of time. May I answer? Because it would have empowered those two female other employees to have intervened, done something about the situation, prevented Mr. Fierros from being in the room where this attack was allowed to take place. Thank you. Thank you. Mr. McBrayer. Yes, Your Honor. May it please the Court. Counsel. Appellees Bonner and Mull went on appeal because when all the facts, in this case, were viewed in the light most favorable to Mr. Rivera, their supervisory conduct was not objectively unreasonable, nor was it deliberately indifferent in light of clearly established law. Objective reasonableness, of course, is not subject to any bright-line tests, and clearly established law is, as the Supreme Court recently reiterated in the Mull and XV Luna case, is not established at or defined at a general proposition level, but rather in light of the specific and particular facts of the case. It would be objectively unreasonable and violated of clearly established law to have zero training on the issue of sexual assault. No doubt about that, Your Honor. I don't believe the evidence in this case shows that there was zero training at this facility. When you look at the materials, you know, and you probably know them well, they're not extensive. I didn't see any reference to assault, rape, or abuse. Instead, it was sort of avoid sexual harassment, avoid romantic or consensual contacting. Do you see anything in their training that says this is what rape is, this is what abuse is, or assault? No, Your Honor. And I would cite this Court to the case of Flores v. Los Angeles, a county of Los Angeles. It's a Ninth Circuit case. But they said your brief. I'm sure. No, Your Honor. It's one I discovered after the brief was written. It's hard for them, and it's hard for us. But what's the cite to it? It's a Ninth Circuit 2014 case. I don't have the pinpoint cite on it. I can provide that to you. Called what? Flores v. County of Los Angeles. Let me just read their specific statement. This involved police officers. But they said, we agree with our sister circuits that in light of the regular law enforcement duties of a police officer, there is not a patently obvious need to specifically train officers not to rape. Not to what? Not to rape. So not to commit a sexual assault. That's your argument, that they don't need to. But I thought you just a minute ago said zero training would be. Zero training in sexual improper sexual conduct. But that's different. A breach of policy. In this case, we don't deny that there was a breach of policy earlier when Mr. Castilleja stood outside the cell and encouraged or watched an inmate perform a sex act on herself. But there was no contact. But that breached the policy. It wasn't actually a violation of the law. Policies say no excessive force. Policies say don't facilitate a suicidee. You can't just say don't do it. I mean, we hear in campuses everywhere, don't rape. But then you need a huge amount of training to understand that rape includes a person who's drunk not being able to consent. These are just not don't do things. I think what the Flores case stands for, and they cite the Eighth Circuit and the Tenth Circuit as well in their opinion, is there is no duty to train your officers not to commit a criminal sexual act. And there's no clearly established law that says it's deliberate indifference not to do that. You have to train your officers in what their – What about our rape case? Well, you have to train your officers in what their routine duties are. And criminal violations of people in your custody is not part of your regular officer. A picture with a line before it saying no contraband to inmates. That's it? No training? That's not all that was provided, though. I know. There is more, but you're taking a legal position that you didn't cite and didn't urge that sounds somewhat extreme to me, whereas your initial statement was, yes, it would be violative of clearly established law to have no training. Now you're slicing a finer line and saying, well, but you don't need training on violent acts because those are criminal. But I can think a lot of things that a jailer would do that would be criminal, and it can't just be sufficient training to say don't do that. So I'm getting very confused at the legal position you're urging to us now. I would think you'd be saying we have considerable materials. He took T. Cole. He signed this statement. All that is there in the record. But what I'm trying to, I guess, focus on is what the cases have held, that if you have absolutely no training for the routine duties that an officer encounters, that is where, ipso facto, you've got deliberate indifference. That is not what we have in this case. We do have training. He did pass his T. Cole. But his own deposition said he thought she was sort of inviting it. He did. He admitted he had a criminal sexual contact with her. He admitted to that, though. And so I don't think there's any dispute here that what he did was criminal in nature. It didn't just violate the policies. It violated the law as well in this case. And to impose some sort of a responsibility on supervisors in jails to train their officers in every possible criminal violation that might occur within that facility is just not the clearly established law. It's what they routinely encounter. After that prior incident with the other jail guard, did the sheriff's office take any action with regard to its employees to try to prevent similar situations from happening? What, if any, action was taken after that first incident? The record shows that there was some follow-up, not extensive follow-up, in reiterating the policy, the jail's policy. But I think probably the most significant thing that took place here is that that jailer was given an option of either being terminated or resigning. And he did. So the policy was enforced, and it was obvious to everyone else that worked at that jail as a result of that incident that that policy would be enforced on just that one infraction. That was, again, did not involve even contact with the inmate. But nevertheless, it shows that the jail was serious about applying their policy and were not relaxed about the application. Is there any training that male officers couldn't be with, and I'm going to make, I think these are undisputed facts, with an intoxicated woman for close to an hour? Is there any training about you don't want to have that, especially because it's undisputed there were two women officers there who he told to leave? What training did this jail have about women should do booking? There was an informal policy at the jail that male jailers weren't to be alone, but it's not part of their written policy, with female inmates. That was an informal policy. And Ms. Rivera started with the women officers. She did start with the women officers. Is there any explanation for why they walk away? There's no explanation for why they walked away from that. But I would invite you to view the video, if you have not already, in this case, which was submitted. There was, of course, a camera monitoring the hallway, and when you actually view the circumstances in this case, there's a long, broad hallway that leads down to the jail cell area. This is out in the administrative area, the booking area. There's just to the left is the booking desk, and across the hall diagonally, not more than 15, 20 feet away, is this multipurpose room. And during the entire 55 minutes that she is in that room with Mr. Fierro's, the door on that room is never closed. Nevertheless, even within that 55 minutes, people are constantly walking up and down that hallway, going to the back, going to the jail area, coming back to the desk. There's not more than a minute period in that time that anyone is not at that booking desk just 15 feet away. During that whole time period, the door is never closed. And 14 times during that 55 minutes, Mr. Fierro's himself comes out of the room and walks over to the desk and walks back in. Relevant to these two defendants, what's the site for the informal policy that men shouldn't be left alone? So it would have been their assumption, they wouldn't be unnoticed that this type of configuration would happen. You mentioned there was an informal policy. Yes. Where is that in the record? I don't have a specific site in that. Is it in your brief? How is an informal policy told to everyone? If it's informal, is there something that's announced to people? It's not written down? How is it enforced? Or, you know, is it by being informal, is it not a policy? How do you say it's? It is a policy. And it was understood. But, again, I would point to this. Was there oral announcement to everyone? And it's not written down, but it was. I honestly do not know the nature by which, but I believe his deposition does state that it was an informal policy there at the jail, that they are not to be left alone. Recognizing that there are positions. Did the two female officers, by leaving him alone with this person, did they violate this informal policy as well as him? I believe he was superior to them. And he was the sergeant, I think, on duty at that time. So even if it was a violation of policy, we're not exactly sure whether or not he advised them or told them to leave. So they may have actually violated the policy, but may have been told by him to leave the room. Nevertheless, they and other officers were never far from that door. It's almost incomprehensible how this act took place once you watch the video. But I would also just point you, when we're talking about that policy of not being left alone with people of the opposite sex, the Fifth Circuit case of Doe v. Robertson, a 2014 case, said that it was not beyond debate under clearly established law that a violation of a policy designed to prevent sexual assault is a fact from which substantial risk or deliberate indifference can be inferred. And that was a case that involved transporting inmates between facilities. It was a contractual situation, a jail that was under a contract, and their contract policy had that you do not leave them alone, and specifically designed to prevent sexual assaults. And the sheriff or the administrator of the facility in that case was aware that that policy had been violated on numerous occasions. But this Court stated even under that circumstance, that was not sufficient to – a sufficient fact from which you can infer a substantial risk or deliberate indifference, either one. On the training point earlier, you said – citing the Ninth Circuit and said jails don't have a responsibility to train their employees on every possible criminal violation that might occur. But here we're talking about what's probably the most well-known and common crime that occurs in prisons and jails, either through other inmates or, in a case like this, through the employees of rape. I mean, there's this federal statute that's been passed to address the problem, the Prison Rape Elimination Act. So don't you have to concede their subjective awareness that there is a risk of this crime occurring in a jail? Well, let me make two points on that. First of all, the Prison Rape Elimination Act was really designed to eliminate inmate-on-inmate rapes. It was not designed as a policy prescription for jails regarding their jailers and their interactions with inmates. And so I think that's – it's certainly not clearly established law. It's not a national standard, and it doesn't apply to county jails either. Their expert even admitted that it does not apply to county jails. Can you say anything about male guards being unsupervised with female detainees in the act? Is there anything in the act addressing that issue? That was not pointed out in the record, whether it does or not. And the rape elimination it refers to is the inmate-on-inmate violence. But just pointing to some standard that would apply to that, that might apply to that, that their expert admits does not apply to county jails, cannot become the clearly established law about what jails have to do with regard to jailers' activities. I'm not saying that. I'm just saying it's a well-known risk statute. It is a – That even not just inmate-on-inmate, look in our case law. There are a lot of cases just like this where the guards are committing sexual acts against the inmates. So that's a well-known problem, isn't it? Yes, Your Honor. And it is clear that at this facility, there was a policy designed to address not just fraternization but sexual contact, which is what they assumed might occur. And they did have a policy, and they were trained, and Mr. Fierro was trained in it. And he signed his acknowledgment that he read it, he received it, he understood it. So why isn't that your primary argument, rather than saying that enough of a policy would be don't do it? Well, that's sort of the absolute at the other end. I believe that there was enough of a policy to establish what is necessary to show that there was no deliberate indifference. And to make a few other points about the causation argument, I think, causation, I think, is important in this case. The counsel has pointed out that there was no video monitoring in this area, this particular room. There's a reason for that. The room was not monitored with video cameras because that room was used for attorney-client meetings. It was used for meetings between inmates and MHMR and passengers. Why couldn't you have no audio video recordings without audio? That could have been done, but there's no state standard that requires that anywhere. There's no national standard that requires jails to have video in every room. But the point being that when they made that decision not to put video monitoring in that room, they did not do it knowing that there was a problem in that room. There had never been an occasion, an incident like this. There had not been any incidences other than the one prior one in the jail. That was back in a jail cell area that was monitored. So it doesn't show that lack of monitoring was the problem if this incident occurred back where there was monitoring. And no incidences had ever occurred in this room, so there was no notice or awareness on the part of our officials that this room was a problem area. And if you look at the video and you see that it is not more than 15 feet from the book is this. Notice of risk, it doesn't exist here. Hence, lesser actions taken? Yes, Your Honor. Do you have a quick thought? You heard us ask several questions to him about hiring. Is your position that arrests that don't lead to convictions can never lead, let's say, proximity, multiple crimes of violence? Do you have an opinion on that as to whether that action couldn't contribute to? In this case, Your Honor, it's constrained by Board of County Commissioners, Bryan County v. Brown, which in that case, as you noted, there was an arrest and a plea of guilty just one year for assault and battery, just one year prior to, talking about proximity, the assault of a woman in the officer's custody. In this case, there is an arrest, no further prosecution, no plea of guilty, no conviction, no further court action or disposition of the case at all of a minor under a law that is — It's more attenuated. Oh, it's — There's a new twist on it that I hadn't really picked up on in the briefs. Is it undisputed that he lied in his application? Was there a question, have you ever been arrested, and he said no, and then you guys caught it? No, Your Honor. I don't know where he gets that argument from. If you look at the — what he seems to have — to me, what I feel like he is referring to, and maybe he can clarify this, is on the documents themselves, the application, and then the document that the jail is supposed to fill out, the jail administrators are supposed to fill out, I think that's page 977 in the record. At that point, it shows that there's not a checkmark by the little place where you're supposed to go down and check off what kind of records you've gotten, and they're supposed to have gotten certified copies of court dispositions, and that is not checked. The reason it's not checked is because there was no court disposition of this case at all. There was no prosecution of this case at all. We don't know what the facts behind the case were. It was a mere arrest. That doesn't — For both of them, they never reached the courts. They were arrested but never — The arrests were in the same month, at the age of — when he was 15 years old, and one was in Potter County, one was in Randall County, and if you know Texas, Amarillo, the city of Amarillo sits on the county lines between — on either side. It sits partially in Randall County, partially in Potter County. So within a month period, he was arrested, it seems like twice, because there's a little difference between the dates, for an incident as a 15-year-old with someone else who was a minor. Under 39.4, the penal code — excuse me, 217 — 21.1181, which is indecency with a child through sexual contact, not sexual relation, not intercourse, but just contact. You can read the rule itself or the — Your Honor, when he gets the arrest information, doesn't he ask, what are these about? And the applicant says, I don't remember. I mean, to me, that's the most troubling fact in the whole hiring decision, because how could someone not remember being arrested twice? And that's going to be one of the most impactful events of your life. You can — he didn't deny that he was arrested, Your Honor. He just didn't really know or understand what the arrest was about. And that can be a fact when you realize this is sexual contact between minors. Perhaps. I mean, I think that's unlikely. Perhaps it's possible that it was a plausible answer. But at a minimum, wouldn't that lead you to follow up and investigate further when someone who's been arrested twice says, oh, I don't know what that was about? But he did follow up, Your Honor. He did contact the DA in both counties. He did contact the probation departments in both counties. And they were not able to provide him any more information about any court dispositions in this case. So he had no other information to go on. The Supreme Court recently said in White v. Pauley that this qualified immunity depends on the knowable facts in the case. There are no knowable facts in this case that counsel has brought into the record to point to behind this arrest eight years prior at the age of 15. We don't know what happened. Is it so hard to find people to take these jobs that you hire someone who has two  I don't want to discount the difficulty oftentimes of finding suitable people. But the Texas TCO does not disqualify a person on this basis from being licensed. Thank you, Your Honor. Was anything held in abeyance below while you're here? No, Your Honor. Was the no-Monell claim still? No, Your Honor. I believe that was. But you're not. It was abated, Your Honor. There's been no ruling. No ruling on that. Yes. Yes. Excuse me. Thank you. Mr. Hogan. Thank you. I'd like to start by correcting one misimpression, Judge Higginson, that I believe counsel left with as far as that application goes. You asked a great question. Did he lie on his application? And the answer is yes. There was a space on that application. I do not have the record site, but it is in the record. Please look at that. There's a space on that application that says, have you ever been arrested for anything? And he mentioned that, yes, he had been arrested. He was arrested a few months back for a theft of services because the local utility company had complained about a theft of services. That was somebody else. That was his brother that had fraudulently used his identity. He listed that. He did not list these other two. It's conceivable that since they're detentions, he's a juvenile, the word arrest would mean different things. But there's nothing in the record to support that, nothing in the testimony. In fact, Mr. Fierro has testified when I asked him, confronting him with this criminal TILADS rap sheet, and I asked him, tell me about these two arrests. He said, I have no idea. I don't remember. I said, you don't remember being taken in for questioning by the juvenile probation office? No. You don't remember anything being, any investigation being conducted into you? No, I have no idea. And that was very disturbing. I know you want to probably correct several things, but in your brief at the end you have a section, summary judgment evidence when viewed as a whole establishes fact issue, but there's no authority. Do you have a case that would say even if individually these points of deficiency don't establish deliberate indifference, that together they do? Do you have a case that stands for that proposition? I do. There were several cases, and I was looking for cases on your other question, and then you just kind of just surprised me with that. The cases where the summary judgment below has been overturned, it has been on the grounds that the subjective deliberate indifference of the official becomes a fact issue, and that that fact issue must be determined by the jury. One of the cases that you were talking about where, well, if there's an undisclosed offense in the record that may not have been adjudicated to be an offense or a conviction, I do have a counter case on that, Ard v. Rushing, which is a case, 2014 case from this Court, and I believe, Judge Costa, you were on that case. It says part of the reason that they found no deliberate indifference there based on prior charges was because the prior charges had been examined by another governing body and had been determined to be unsubstantiated. Yeah. Which we don't have that here. He was not cleared. They — Referentially, what about just my quick question on that last section? Do you have a case that stands for that? Just off the top of your mind, it just wasn't in the brief. Not off the top of my head, I don't. That's okay. But I have seen that there are cases that do go that way. But because Manuel Fierros lied on the application, it was incumbent on A.J. Bonner to do more. Instead, he just stuck his head in the sand. He said, well, I've asked Manuel Fierros about this, and he said, I don't know. I've asked the DA's office about this, and they've said, I don't know. So we talked to him in his deposition about, well, did you send somebody to go up to Randall and Potter County? Well, no. And I think there's a fact issue there as to whether he even did call Randall or Potter County. Did we know today more details about those two arrests? No, we did not. Hale County would have had the right to get those as a law enforcement agency and as an employer, and they never did during the pendency of this case. They have not sought to get those. But Mr. Bonner did not even make a written note of who he talked to at Randall or Potter Counties, what day he talked to them. He didn't make any notes at all. Suddenly, four years after Mr. Fierros was hired, he remembers talking to someone, but cannot remember any more details than that himself. How long had he been a jailer before this incident? Two years. Had there been any other disciplinary problems or issues with him? There had been a couple of disciplinary issues, none arising to this level, and none involving improper sexual contact. Were there efforts in discovery to find out what happened in these two incidents and it was just unsuccessful? Because most of these cases, like the one with the officer who worked for a school district, once the civil rights case was pursued, it came out that he'd actually been let go of that job. So you could show that the failure to investigate meant there was not information that otherwise would have been available. Was there any attempt here to get to the bottom of these two arrests? Only by requesting that information from Hale County. It was not forthcoming, and there's been nothing else done since then. And they're juvenile, right? And they're juvenile, which is the big problem, that individual plaintiffs, it's my understanding, cannot get those records, but Hale County can. And at his deposition, where he just continued to say he didn't know what it was about? That's right, that's right. And there are two, the Monell claim is being held in abeyance until the resolution of this. There's also a pending case against Mr. Fierro. He is still a defendant in this case, also held in abeyance. Thank you.